# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: _____

| | |
|---|---|
| LLOYD ARTOLA, ANGEL ESQUIJAROSA, DEMETRIE HYLICK, and MICHAEL SPENCER on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AKTIENGESELLSCHAFT and AUDI OF AMERICA, INC.,<br><br>Defendants. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION AND VENUE .......................................................................... 6

III.    PARTIES ............................................................................................................. 7

IV.     FACTUAL ALLEGATIONS ............................................................................ 13

      A.      The EA888 Engine .................................................................................. 13

      B.      Timing Chain Systems ............................................................................ 15

      C.      The Defective Timing Chain System ...................................................... 18

      D.      Defendants' Knowledge of the Timing Chain System Defect ............................ 24

            1.      Technical Service Bulletins ......................................................... 25

            2.      National Highway Traffic Safety Administration Complaints ................. 29

            3.      The Chain Tensioner Redesign .................................................... 34

V.      FURTHER ALLEGATIONS ............................................................................. 38

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ........................................ 51

VII.    CLASS ACTION ALLEGATIONS .................................................................. 53

VIII.   CLAIMS FOR RELIEF .................................................................................... 59

IX.     PRAYER FOR RELIEF .................................................................................... 79

X.      DEMAND FOR JURY TRIAL ......................................................................... 80

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.     INTRODUCTION

1.     Plaintiffs Lloyd Artola ("Artola"), Angel Esquijarosa ("Esquijarosa"), Demetrie Hylick ("Hylick"), and Michael Spencer ("Spencer") (collectively "Plaintiffs") bring this class action suit against Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VW America") (together, "VW"), Audi Aktiengesellschaft ("Audi AG"), and Audi of America, Inc. ("Audi America") (together, "Audi") (collectively, "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease, or leased a 2008 through 2013 model year 2.0L TSI or 2.0L TFSI VW or Audi vehicle containing the defective Timing Chain System as defined below (the "Class Vehicles"), for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

2.     Defendants wrongfully and intentionally concealed a defect in the timing chain system (the "Timing Chain System") of the Class Vehicles, which can fail at any time, forcing Plaintiffs and members of the Classes (defined below) to incur out of pocket costs to repair or replace the damaged engine parts or their entire engine.  At a minimum, repairs will exceed $1,000.00.  In some cases, repairs can cost several thousands of dollars.

3.     The Timing Chain System is comprised, *inter alia*, of the camshaft sprockets, camshaft chain, camshaft chain hydraulic tensioner, timing gear-tensioning rail, and timing gear

---

[1] Counsels' investigation includes an analysis of publicly available information, including Defendant's Technical Service Bulletins, National Highway Traffic Safety Administration documents and consumer complaints, as well as expert analysis of the defective and redesigned timing chain tensioners and timing chains, field investigations conducted by counsel, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

chain rails. The system is depicted in the figure at paragraph 78, *infra*. Class engines use a hydraulic timing chain tensioner actuated by engine oil pressure to regulate tension on the timing chain tensioning rail that applies tension to the timing chain.  This tension keeps the timing chain from jumping the teeth on the sprockets that are attached to the camshafts and crankshaft and maintains synchronization between rotating engine components including the cylinder valves and pistons. Without proper timing chain tension and synchronization, the engine will run very poorly (if at all) and/or, if sufficient chain skip and mis-synchronization occurs, its failure to function properly will cause cylinder valves and pistons to collide, resulting in severe internal damage to the engine.

4.      The Timing Chain System defect also presents a significant safety risk for Plaintiffs and members of the Classes because when the Timing Chain System suddenly and unexpectedly fails, Class Vehicles lose engine power, which causes a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes.  Thus, drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents as a result of Defendants' failure to disclose the existence of the Timing Chain System defect and corresponding safety risk.

5.      Despite Defendants' knowledge of the Timing Chain System defect, Defendants have never disclosed to Plaintiffs and members of the Classes that the defect exists or that drivers and occupants of the Class Vehicles are at risk.  Notwithstanding the fact that the Timing Chain System should operate normally in vehicles for at least 120,000 driven miles, on information and belief, Defendants have refused to repair or replace the Timing Chain System outside of the time periods covered by the manufacturer's warranties.  Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Timing Chain System to

Plaintiffs and members of the Classes by fraudulently concealing the existence of the defect, which Defendants know will typically occur after the expiration of the warranties. Repairs can range in cost from approximately $1,200.00 (to replace the tensioner and timing chain) up to approximately $10,000.00 (to replace the entire engine).

6.      The Class Vehicles are equipped with engines, known as EA888 engines that contain the defective Timing Chain System. As a result of the defect, the EA888 engines are prone to premature failure before the end of the useful life of the engine and before 120,000 driven miles—the lowest number of miles Defendants recommend for regularly scheduled maintenance. Defendants designed, manufactured, imported, distributed, marketed, and/or sold Class Vehicles with the defective Timing Chain System. On information and belief, the EA888 engine with the defective Timing Chain System is contained in at least the following VW and Audi Class Vehicles: 2008-2010 and 2012 VW Beetle; 2009-2013 VW CC; 2008-2012 VW EOS; 2008-2012 VW Golf; 2008-2012 VW GTI; 2008-2012 VW Jetta; 2008-2012 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2012 VW Routan; 2008-2012 VW Tiguan; 2008-2013 VW Touareg; 2011 VW Touareg Hybrid; 2008-2012 Audi A3; 2008-2012 Audi A4; 2008-2012 Audi A5; 2010-2012 Audi A6; 2012 Audi A7; 2008-2012 Audi TT; 2010-2012 Audi Q3; 2009-2012 Audi Q5; and 2012 Audi Q7.

7.      The Audi A3 and VW Class Vehicles are equipped with EA888 2.0L TSI engines designated with engine codes CCTA or CBFA. These engines were introduced in the United States in the 2008 model year. The remaining Audi Class Vehicles are equipped with EA888 2.0L TFSI engines designated with engine codes CAEB, CAEA, or CDNC. The engines designated with these five codes are all versions of the EA888 engine and all use the same Timing Chain System.

8.      Based on Defendants' representations in the USA Warranty and Maintenance schedules for the Class Vehicles, the Timing Chain System is expected to last for the useful life of the engine or at least 120,000 miles without the need for maintenance, repair, or replacement. For example, owners and lessees of Class Vehicles were provided owner's manuals and USA Warranty and Maintenance schedules that do not show any Timing Chain System inspection or maintenance within the first 120,000 miles.[2]  Indeed, the Timing Chain System is omitted from the maintenance schedules.

9.      Defendants provide warranty coverage for Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts."   Under warranties provided to members of the Classes, Defendants promised to repair or replace defective Class Vehicle engine components arising out of defects in materials and/or workmanship, such as the Timing Chain System defect, at no cost to owners or lessees of the Class Vehicles.  These warranties were provided in Class Vehicle window labels, owner's manuals and brochures and were advertised on Defendants' websites.

10.      Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or

---

[2] *See* Exhibit A (summarizing maintenance schedule and not showing any scheduled Timing Chain System maintenance for 120,000 miles); *see also* Exhibit B (not showing any scheduled Timing Chain System maintenance for 130,000 miles); Exhibit C (excerpts of pages 28-42 from VW USA Warranty and Maintenance, CC, EOS, GTI, Golf, Tiguan, Touareg, Model Year 2011, showing no scheduled Timing Chain System maintenance within the first 130,000 miles).

workmanship of any parts they supplied, including the Timing Chain System.  Because the Timing Chain System defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Timing Chain System under the terms of the warranties.  Defendants knew or should have known that the majority of Timing Chain System failures likely would occur outside of the warranty periods and have wrongfully transferred the costs of repair or replacement to Plaintiffs and members of the Classes through Defendants' fraudulent concealment of the defect.  These costs are significant and range in the thousands of dollars, and no reasonable consumer expects to incur such costs during the useful life of the engine given Defendants' representations in the USA Warranty and Maintenance schedules.

11.    Knowledge and information regarding the latent Timing Chain System defect was in the exclusive and superior possession of Defendants and their dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers, *inter alia*, Defendants were aware of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Classes.

12.    Defendants misrepresented the standard, quality, or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Timing Chain System defect to increase profits and decrease costs by selling additional Class Vehicles and transferring the costs of repair or replacement of the Timing Chain System to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes.  On information and belief, Defendants have acknowledged the Timing Chain System defect by releasing several Technical

Service Bulletins ("TSBs") describing the issue to their exclusive network of dealerships beginning in or around June 2010.

13.     Plaintiffs and members of the Classes assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, unjust enrichment, and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (on behalf of the Florida Sub-Class).

14.     Defendants knowingly omitted, concealed, and suppressed material facts regarding the defective Timing Chain System and its corresponding safety risk and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes. As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiffs and members of the Classes are entitled to damages and injunctive and declaratory relief.

15.     As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have suffered damages, including:  (1) out-of-pocket expenses for repair or replacement of the Timing Chain System, other engine parts, or the entire engine; (2) costs for future repairs or replacements; (3) out-of-pocket expenses associated with loss of use of their Class Vehicles; (4) sale of their vehicle at a loss; and/or (5) diminished value of their vehicles.

## II.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in

which Defendant is a citizen.  This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

17.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District.  Defendants' actions have caused harm to Plaintiffs Artola, Esquijarosa, Hylick, and Spencer, Florida residents, as well as hundreds of members of the Classes residing in Florida.  VW America and Audi America maintain the following offices and/or facilities in Florida: (1) the "VW Group Latin America" in Miami, Florida; and (2) the "Parts Distribution Center" in Jacksonville, Florida.[3]   Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District, and venue is proper.

## III.   PARTIES

### Plaintiffs

18.     Plaintiff Lloyd Artola is a citizen of the State of Florida and resides in Miami, Florida.  On June 11, 2011, Plaintiff Artola purchased a 2011 Audi Q5 equipped with a 2.0L engine from Audi of Coral Springs in Coral Springs, Florida for personal or household use.  One or more Defendants provided the following manufacturer's warranties on Plaintiff Artola's vehicle: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" and (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts."   Under these warranties, Defendants promised to repair or replace defective engine

---

[3]  *See* About Us, Locations, Volkswagen Group America, http://www.volkswagengroup america.com/locations.html (last visited April 4, 2017).

components arising out of defects in materials and/or workmanship, such as the Timing Chain System defect, at no cost to Plaintiff Artola.

19.     Unbeknownst to Plaintiff Artola, at the time of purchase through present, his vehicle contained the defective Timing Chain System.

20.     In early March of 2017, Plaintiff Artola's 2011 Audi Q5, at approximately 75,000 miles, had the check engine light illuminate.  He drove the vehicle to Audi of Pembroke Pines in Pembroke Pines, Florida and requested the dealership conduct a diagnostic check.  Audi of Pembroke Pines informed him that the Timing Chain System was defective and that his vehicle had severe engine damage.  The timing chain, tensioner, chain guide gaskets, rails, rollers, and cylinder heads all needed to be replaced.   The repairs to Plaintiff Artola's vehicle were approximately $6,700 and through much effort, Audi agreed to waive those charges.

21.     Plaintiff Artola did not have use of his vehicle for approximately two weeks.

22.     Plaintiff Angel Esquijarosa is a citizen of the State of Florida and resides in Miami, Florida. In 2009, Plaintiff Esquijarosa's daughter, Jenny Esquijarosa, leased a 2010 VW CC Sport with a 2.0L TSI engine from a VW authorized dealer, Deel Volkswagen, in Miami, Florida for personal or household use.  On or around March 21, 2013, Plaintiff Esquijarosa purchased the vehicle from the same dealer for personal or household use.  Plaintiff Esquijarosa purchased an Extended Warranty for the vehicle that had just expired the week before the vehicle stalled.

23.     Unbeknownst to Plaintiff Esquijarosa at the time his daughter leased the vehicle in 2009, and his purchase in 2013, Plaintiff Esquijarosa's vehicle contained the Timing Chain System defect.

24.     On or around June 9, 2016, Plaintiff Esquijarosa's 2010 VW CC, at approximately 38,000 miles, experienced the Timing Chain System defect, which caused catastrophic failure of the vehicle's engine. The vehicle was towed to Deel Volkswagen in Miami, Florida for service after it stalled while his wife was driving it.  Plaintiff Esquijarosa informed Deel Volkswagen that the vehicle had stalled and would not start. Deel Volkswagen performed a diagnostics check and informed Esquijarosa that the vehicle needed engine parts, cylinder heads, and transfer components replaced.  Deel Volkswagen also informed Esquijarosa that his 2010 VW CC was out of the time period for coverage under his extended warranty.  Deel Volkswagen further informed Esquijarosa that the repairs from the Timing Chain System defect cost about $4,000.  Mr. Esquijarosa contacted Volkswagen, and after much effort, Volkswagen agreed to split the cost of repairs with him.

25.     As a result of the Timing Chain System defect, Plaintiff Esquijarosa was forced to replace cylinder heads, transfer components, and numerous other engine parts.  Plaintiff Esquijarosa was forced to incur $2,000 in out-of-pocket expenses for these repairs, and did not have use of his vehicle for approximately two weeks.

26.     Plaintiff Demetrie Hylick is a citizen of the State of Florida and resides in Orlando, Florida.  Plaintiff Hylick purchased a used 2010 VW CC equipped with a 2.0L engine from Woodall Auto in Ocoee, Florida, in April of 2013 for personal or household use.  Plaintiff Hylick's vehicle, at approximately 89,000 miles, sustained severe engine damage related to the Timing Chain System defect in July of 2016.  The vehicle was taken to David Maus VW South in Orlando, Florida.  Plaintiff Hylick incurred approximately $8,800 in costs having his 2010 VW CC's engine repaired.

27.     Plaintiff Hylick lost the use of his Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

28.     Plaintiff Michael Spencer is a citizen of the State of Florida and resides in Ormond Beach, Florida.  In March of 2012, Plaintiff Spencer purchased a used certified pre-owned 2009 VW Passat equipped with a 2.0L TSI engine from a VW dealer, Fields Volkswagen, in Daytona Beach, Florida for personal or household use.  At the time of purchase, the vehicle had 26,869 miles and was covered under an existing warranty.

29.     In June of 2016, Plaintiff Spencer's 2009 VW Passat, at approximately 59,300 miles, would not start.  He had the vehicle towed to a local VW auto specialist, Lonnie's Auto Repair, Inc. in Ormond Beach, Florida.   A diagnostic check performed by the specialists of Lonnie's Auto Repair indicated that the Timing Chain System was defective and that Spencer's vehicle had sustained severe engine damage.  VW refused to pay for any of the repairs.

30.     Plaintiff Spencer spent approximately $3,300 to have his vehicle's engine rebuilt, pistons and valve torques polished off, and valves replaced.   In addition, Plaintiff lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation

31.     None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the defect or premature failure of the Timing Chain System in the Class Vehicles.  Had Defendants disclosed that defects in the Timing Chain System would require Plaintiffs to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the engine, Plaintiffs would not have purchased their vehicles or would have paid less for their respective vehicles.

32.     When Plaintiffs and members of the Classes purchased and/or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk.  Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs and Members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs and members of the Classes would have demanded repair or replacement during the warranty periods at no cost to Plaintiffs and members of the Classes—as provided for in Defendants' warranties.  Defendants represented that the class engine timing chain and associated components, such as the chain tensioner and rails, would be maintenance free up to and including 120,000 miles.

33.     The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used.  Plaintiffs and members of the Classes have suffered an ascertainable loss as a result of Defendants' deceptive conduct, breach of common law and statutory duties, and omissions and/or misrepresentations associated with the Timing Chain System defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their Class Vehicles.

34.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs and members of the Classes of the premature failure of the Timing Chain System and/or the defective nature of the Timing Chain System prior to the purchase or lease of the Class Vehicles.

**Defendants**

35.     Defendant VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is one of the largest automobile manufacturers in the world, and is in the business of designing, developing, manufacturing, and selling automobiles.  VWAG is the parent corporation of VW America and Audi AG.

36.     Defendant VW America is a New Jersey corporation doing business in Florida and throughout the United States.  VW America's corporate headquarters is located in Herndon, Virginia.  VW America is a wholly-owned U.S. subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing, and sale of VW automobiles nationwide.

37.     Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.  It is a wholly-owned subsidiary of VW AG.  Audi AG is the parent of Audi America and the Audi Group.  Audi AG designs, develops, manufactures, and sells luxury automobiles under the Audi brand name.

38.     Audi America is a Delaware corporation with its principal place of business located in Herndon, Virginia.  Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles in Florida and nationwide.

39.     At all relevant times, VW America and Audi America acted as authorized agents, representatives, servants, employees, and/or alter egos of VW AG and Audi AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring of the performance of VW and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction.

12

40.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW and Audi brand names throughout the United States.   Defendants and/or their agents designed, manufactured, and/or installed the Timing Chain System in the Class Vehicles.   Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

## IV.     FACTUAL ALLEGATIONS

### A.     The EA888 Engine

41.     Defendants are major manufacturers of vehicles sold under the VW and Audi brands throughout the United States.   Defendants designed, manufactured, imported, distributed, marketed, and/or sold the Class Vehicles in the United States.   Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

42.     Plaintiffs and members of the Classes purchased, leased, and/or own Class Vehicles.

43.     The Class Vehicles are equipped with 2.0L TSI or 2.0L TFSI EA888 engines which were first introduced by Defendants for the 2008 model year.   The EA888 engine contains the defective Timing Chain System, which is prone to premature failure, creating a safety risk and forcing Plaintiffs and members of the Classes to pay thousands of dollars to repair or replace the damaged engine parts or the entire engine.   The Audi A3 and VW Class Vehicles are equipped with EA888 2.0L TSI engines designated with engine codes CCTA or CBFA.   The remaining Audi Class Vehicles are equipped with EA888 2.0L TFSI engines designated with engine codes CAEB, CAEA or CDNC.

44.     Among other updates from earlier engines, the EA888 engine is equipped with the defective Timing Chain System as alleged herein.  Prior to the introduction of the chain-driven EA888 engine, VW and Audi used timing belts to synchronize the crankshaft and the camshafts.  According to the 2.0L TFSI Engine Self-Study, the "EA888 family of engines is replacing the belt-driven camshaft engines within the Volkswagen Group worldwide."  *See* Exhibit D at 1 (Audi self-study program of the TFSI Engine (the "TFSI Engine Self-Study")).  Thus, beginning for model year 2008, VW and Audi exclusively used timing chains to synchronize the operation of the crankshaft with the camshafts in 2.0L TSI and 2.0L TFSI engines.

45.     Generally, a timing chain and a timing belt perform the same function, synchronizing the crankshaft with the camshaft(s).  However, noise level, cost-savings, and maintenance considerations, among others, influence a vehicle manufacturer's decision to use a timing chain or timing belt system.  Timing chains usually last considerably longer than timing belts.  For example, Defendants' maintenance schedules require replacement of timing belts after a certain number of miles but do not require maintenance or replacement of the chain-driven Timing Chain System.  *See* Exhibits A and E.

46.     According to Audi, the EA888 engine is the base model for both the 2.0L TSI and the 2.0L TFSI.  *See* Exhibit D at 1.  According to the TFSI Engine Self-Study,

> The turbocharged 2.0L 4V chain-driven AVS engine (CAEB) [the TFSI Engine] described in this Self-Study Program is a development of the 1.8L chain-driven engine (EA 888 family) introduced in Europe in 2006.  The 1.8L engine, known as the Stage 0 engine, was the basis for the chain-driven 2.0L 4 cylinder engine (CCTA/CBFA) [the TSI Engine] introduced in North America during the 2008 model year.

Id.

47.     A comparison of the "Technical Description" sections of the TFSI Engine Self-Study and the TSI Engine Self-Study demonstrates that both the 2.0L TFSI and the 2.0L TSI are "chain-driven" engines that utilize the same Timing Chain System.  *See* Exhibit F.

48.     The TFSI Engine Self-Study and the TSI Engine Self-Study include the same terms in the Technical Description sections regarding the Timing Chain System, including that the "Engine Block" features include: (1) "Cast iron crankcase"; (2) "Balancer shafts in crankcase"; (3) "Forged steel crankshaft"; (4) "Sump-mounted oil pump—chain-driven by crankshaft"; (5) "Timing gear chain—front end of engine"; and (6) "Balancer—chain-driven at front end of engine."  *Compare* Exhibit D at 2 *with* Exhibit F at 1.

**B.     Timing Chain Systems**

49.     In order for a conventional four stroke internal combustion engine to function, fuel and air must be mixed in a cylinder.  The resulting "combustion" causes the piston(s) to reciprocate and the crankshaft to rotate.  Waste products of the combustion process are then removed to permit further combustion to occur.  In a conventional gasoline powered automobile, the combustion occurs in an engine cylinder.  The addition of fuel and air and the removal of combustion products must occur in a carefully regulated sequence to permit the engine to operate properly.

50.     To regulate the addition of fuel and air and removal of byproducts, all Class Vehicles contain a timing system that controls the timing of the opening and closing of the engine's intake valves (responsible for releasing fuel and air into the engine cylinder) and exhaust valves (responsible for clearing the byproducts of combusted fuel and air).  A timing chain connects the crankshaft (connected to the pistons) to the camshaft—which opens and closes the cylinder valves.  The camshaft is designed to open and close the intake valves and exhaust valves in specifically timed intervals synchronized to the pistons.

15

51.     The 2.0L TSI and the 2.0L TFSI, both EA888 four cylinder turbocharged gasoline engines, use a double overhead camshaft ("DOHC") configuration with two camshafts connected to the crankshaft by a timing chain to ensure that the operating cycle is timed correctly.  The EA888 engine is an interference engine, which is a type of four-stroke engine in which one or more of the intake valves or the exhaust valves in the fully open position extend into the area into which the piston also travels.  Thus, if the camshaft timing is sufficiently off due to a stretched, broken, or dislocated timing chain, catastrophic engine failure occurs, because the pistons will slam into the valves, leading to damaged pistons or valves (or both) and requiring expensive repair or replacement of the engine.  Figure 1, below, is a diagram of the labeled components of a DOHC engine with one dedicated camshaft to regulate the intake valves and one dedicated camshaft to regulate the exhaust valves.

**E**: the exhaust camshaft

**I**: the intake camshaft

**S**: the spark plug

**V**: the valves



**P**: the piston

**R**: the Piston connecting rod

**C**: the crankshaft

**W**: water jacket for coolant flow

**FIGURE 1**

16

52.     The four-stroke cycle is demonstrated by Figures 2 through 5 below.

**FIGURE 2**            **FIGURE 3**            **FIGURE 4**            **FIGURE 5**



53.     Figure 2 shows the intake camshaft depressing the intake valve so that the fuel and air mixture can enter into the piston combustion chamber.  Figure 3 shows the intake valve camshaft and the exhaust valve camshaft disengaged from their respective valves so that the piston chamber is closed and the rising piston can compress the air and fuel right below the spark plug for optimal combustion.  Figure 4 shows the spark plug combusting the compressed air and fuel mixture in the now-sealed chamber to drive the piston down.  And finally, Figure 5 shows the exhaust camshaft depressing the exhaust valve to open the valve so that the rising piston can expel the combusted air and fuel mixture.  The same process repeats itself for all of the vehicle's pistons in a synchronized fashion.

54.     For this four-stroke cycle to operate as designed, the crankshaft and the camshafts have to be connected so that piston movement and opening and closing of valves are fully synchronized.   A physical connection between the crankshaft and camshaft is typically

maintained through the use of a timing belt or a timing chain.  The Class Vehicles use a timing chain to make the connection between the crankshaft and the camshaft.  When the timing system fails, synchronization is lost and the four-stroke cycle is disrupted causing an inability to start, accelerate or maintain speed, immediate power loss, and/or catastrophic engine failure.  When a piston drives into open valves, massive damage can be caused to the engine, which will suddenly fail.  When the engine suddenly fails, many dangerous conditions may occur, including that the power assisted brakes and the power steering system cease to operate. If this occurs, additional force is required to steer and stop the vehicle.

55.     Thus, a properly functioning Timing Chain System is crucial to the safe and reliable operation of the Class Vehicles.

     **C.**     **The Defective Timing Chain System**

56.     Based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles, a Timing Chain System is intended and reasonably expected to last for the useful life of the engine and at least 120,000 miles without the need for repair or replacement.  According to the Class Vehicles' maintenance schedules, the Timing Chain System in the Class Vehicles is expected to last beyond the warranty periods and should not require maintenance during the useful life of the engine.  For example, the Volkswagen 2009 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within the first 130,000 miles (the highest number of miles shown in the maintenance schedule) and the 2010 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within the first 120,000 miles (the highest number of miles shown in the maintenance schedule).  *See* Exhibits A and B.  Similarly, the Audi 2010 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within the first 125,000 miles (the highest number of miles shown in the maintenance schedule) and 2011

maintenance schedule (for all models) do not require maintenance of the Timing Chain System within the first 135,000 miles (the highest number of miles shown in the maintenance schedule). *See* Exhibits E and G.  Thus, the failure of the Timing Chain System in the Class Vehicles occurs prematurely and before any reasonable consumer would expect the failure to occur.

57.     Figure 6 below depicts the Timing Chain System in the 2.0L TSI and the 2.0L TFSI:



**FIGURE 6**

19

58.     One part that has been identified as the source of the defect in the Timing Chain

System is labeled the "Hydraulic Tensioner, Camshaft Chain Drive" (the "Chain Tensioner") in

Figure 6.   The Chain Tensioner is an internal engine component that automatically controls

tension on the timing chain and prevents it from skipping.   The Chain Tensioner is critical

because if tension is not maintained on the timing chain, the chain can "jump a tooth" on a

camshaft drive sprocket and set off a chain reaction—causing bent valves, extensive damage to

engine parts, and, ultimately, catastrophic failure of the engine.

59.     The Chain Tensioner controls tension by utilizing oil pressure augmented by an

internal spring to push an integrated piston with a controlled force against a timing chain

tensioning rail that presses against the chain and keeps it in proper tension.   There is only oil

pressure, however, when the vehicle is turned on and the engine is running.   When the vehicle is

turned off and during startup, and/or when there is no oil pressure or oil pressure is low, the

Chain Tensioner uses a mechanism to keep the piston from collapsing and releasing the tension

to keep the chain tight.   The following photographs of the defective Chain Tensioner (part

number 06H 109 467 N)[4] obtained from a Class Vehicle highlight the main parts of the Chain

Tensioner:

**FIGURE 7**                                        **FIGURE 8**

     

---

[4] Other versions of the chain tensioner have been identified by the following part numbers: 06H
109 467 AB and 06H 109 467 T.

**FIGURE 9**                                    **FIGURE 10**

    

60.     As shown in Figures 7, 8, and 9, the mechanical mechanism incorporates a steel retainer clip, piston retainer pin, ratchet pawl, and piston teeth to keep the piston in place when the vehicle is off and there is no oil pressure.

61.     Plaintiffs retained a consultant with a Ph.D. in mechanical engineering and an extensive engineering mechanical design background to conduct a preliminary analysis of the Timing Chain System, including the Chain Tensioner.  Plaintiffs' consultant analyzed a defective Chain Tensioner that was taken from a Class Vehicle that experienced engine failure as a result of the defective Timing Chain System.  Plaintiffs' consultant determined that the ratchet pawl failed and caused the tension on the timing chain to be lost when the engine was off, allowing the timing chain to "jump a tooth" during startup, leading to bent intake valves and catastrophic engine failure.

62.      According to Plaintiffs' consultant, the Chain Tensioner uses a ratchet pawl mechanism to prevent the tensioner piston from collapsing inward into the tensioner body when the engine is shut off and oil pressure is not pushing the piston out.  The design is such that the integrated piston incorporates ratchet teeth on its top side, and a detached pawl is held in a slot

21

above the piston by a retaining clip.  *See* Figure 8, Figure 9, and Figure 10.  Thus, if the small teeth on the pawl are broken or worn or if the retaining clip fails to adequately hold the pawl in position, the piston does not hold the proper tension on the chain when the engine is off and during engine startup during the short time before engine oil pressure is built up to its normal level.  As a result, the low tension on the chain can allow the chain to "jump a tooth" on a camshaft drive sprocket, causing the camshaft to be "out of time" with the crankshaft and pistons.

63.     Thus, when the engine is "out of time," valves will open and close at the wrong time, allowing the pistons to hit and bend the valves when the pistons come up on the compression stroke.  This can lead to destruction of the timing chain and/or other engine parts, or catastrophic engine failure.

64.     Figure 11 demonstrates how the valves bend after being struck by the piston:



**FIGURE 11**

65.     According to Plaintiffs' consultant, bent valves, as shown in Figure 11, are a very significant repair item on an engine and cost thousands of dollars to repair.

66.     No reasonable consumer expects to spend thousands of dollars to repair or replace essential engine components (or the entire engine) during the useful life of the engine.  Further,

Plaintiffs and members of the Classes reasonably expect their Timing Chain System not to fail before the end of the useful life of the engine (*see supra*, ¶ #8 & n.3) nor to pay to repair or replace their Timing Chain System or engine in the event of a Timing Chain System failure.  As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have been or will be forced to pay thousands of dollars to replace or repair the Timing Chain System, other parts affected by the system's failure, and/or the entire engine.

67.     As detailed herein, Plaintiffs and members of the Classes also suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' material misrepresentations and omissions regarding the standard, quality, or grade of the Class Vehicles and/or the existence of the Timing Chain System defect. The fact that the Timing Chain System is prone to premature failure is material to Plaintiffs and members of the Classes both because it subjects Plaintiffs and members of the Classes to unexpected costs of repair or replacement ranging in the thousands of dollars and because the sudden failure of the Timing Chain System presents a risk of injury and/or death to drivers and passengers of the Class Vehicles.  The Timing Chain System is an integral component of the 2.0L TSI and 2.0L TFSI engines in the Class Vehicles, and its failure can lead to the inability to accelerate or maintain speed and/or catastrophic engine failure.  These types of failures subject drivers and passengers of the Class Vehicles to safety risks, including the potential for rear-end collisions and other accidents.   As a result of Defendants' material misrepresentations and omissions, including the failure to disclose that the Class Vehicles are prone to premature Timing Chain System failure, Defendants have recklessly placed Plaintiffs and members of the Classes and the occupants of the Class Vehicles at risk.

**D.    Defendants' Knowledge of the Timing Chain System Defect**

68.    Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and members of the Classes the defects in the Class Vehicles, even though Defendants knew or should have known of design and manufacturing defects in Class Vehicles if Defendants had adequately tested the Timing Chain Systems and engines in the vehicles.

69.    Knowledge and information regarding the Timing Chain System defect were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and members of the Classes.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and members of the Classes.  Defendants knew or should have known that the Timing Chain System defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles or before the warranties on their Class Vehicles expired.

70.    Defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in the Timing Chain Systems shortly after production of the Class Vehicles commenced. Defendants engaged in extensive field research and quality investigations and analysis before redesigning the specifications for the defective part, rebidding the new part, and manufacturing

and distributing the new part.  In addition, Defendants have and continue to be under a legal obligation, pursuant to federal law, to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

71.     As recognized in the Class Vehicles' owner's manuals, Defendants knew that any defect that can potentially lead to engine failure, such as the Timing Chain System defect, presents a serious safety risk.  Numerous dangerous conditions occur when the engine suddenly fails, including that the power assisted brakes may cease operating and the power steering system fails.

72.     Notwithstanding Defendants' exclusive and superior knowledge of the Timing Chain System defect, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the defect through and including the 2013 model year.  Defendants have intentionally concealed that the Timing Chain System is defective, prone to premature failure, and presents a safety risk rather than disclosing this risk to consumers, including Plaintiffs, and members of the Classes, and the public.

### 1.     Technical Service Bulletins

73.     On information and belief, as a result of their exclusive and superior knowledge regarding the defective Timing Chain System, Defendants released several TSBs describing the issue to their exclusive network of dealerships beginning in or around June of 2010.

74.     On or around June 8, 2010, Defendants released a TSB (TSB-15-10-04) describing timing chain issues with the following 2009 model year Audi Class Vehicles: Audi A3; Audi A4; Audi TT.  NHTSA summarized the TSB as follows: "AUDI: MIL ON; **NOISE**

**FROM TIMING CHAIN** (DTC P001600). MIL ON; **ENGINE DIFFICULT TO START**; SOMETIMES RATTLE IN ENGINE COMPARTMENT; BANK 1, CAMSHAFT POSITION G40/CRANKSHAFT POSITION SENSOR G28, WRONG ASSIGNMENT STORED IN ENGINE CONTROL UNIT, POSSIBLE DAMAGE TO CAMSHAFT OR CAMSHAFT BEAR SURFACES. *PE." Exhibit H (emphasis added).

75.     On or around April 15, 2011, Defendants released a second TSB (TSB-15-11-21) describing timing chain issues with the following 2009 model year Audi vehicles: Audi A3; Audi A4; Audi TT.  NHTSA summarized the TSB as follows: "VOLKSWAGEN: MALFUNCTION LIGHT IS ON AND **THERE IS NOISE FROM THE TIMING CHAIN**. **ENGINE IS DIFFICULT TO START** AND THERE ARE TWO POSSIBLE TROUBLE CODES STORED. THERE IS POSSIBLE DAMAGE TO THE CAMSHAFT. *RM."  Exhibit I (emphasis added).

76.     On or around July 23, 2012, VW released a TSB describing problems associated with the defective Timing Chain System in 2008-2013 model year vehicles with 2.0L CCTA and CBFA engines.  The TSB warned that owners or lessees of vehicles with the defective Timing Chain System may experience: "**Engine Rattling Noises after Start, Engine Doesn't Start, Timing Chain Slipped**." Exhibit J at 1 (the "2012 TSB").

77.     The 2012 TSB applied to the following VW vehicles: 2008-2010 and 2012 VW Beetle; 2009-2013 VW CC; 2008-2012 VW EOS; 2008-2012 VW Golf; 2008-2012 VW GTI; 2008-2012 VW Jetta; 2008-2012 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2012 VW Routan; 2008-2012 VW Tiguan; 2008-2013 VW Touareg; and 2011 VW Touareg Hybrid.

78.     Under Technical Background, the 2012 TSB states: "[t]iming chain tension may be incorrect due to tensioner" and "[a]s a result, the timing chain can skip and causing [sic] contact between the pistons and valves." *Id.* at 1 (emphasis added).

79.     At the time the 2012 TSB was released, dealers were instructed to repair the defective Timing Chain System when customers complained of (1) "[r]attling noises after engine start from front of vehicle or engine compartment"; (2) "[e]ngine does not start"; or (3) "MIL ON." *Id.*

80.     The 2012 TSB included the two images below depicting the correct and incorrect position of the piston within the Chain Tensioner body. *See id.* at 3. In Figure 12, the Chain Tensioner piston is in the wrong position because it is retracted and incapable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner incorrect." *Id.* In Figure 13, the Chain Tensioner piston is in the correct position because it is extended and capable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner correct." *Id.*





**FIGURE 12**                              **FIGURE 13**

81.     The 2012 TSB superseded a previous TSB relating to the Timing Chain System defect, which was issued to VW dealerships on or around December 22, 2011 (T.B. V151104).

Minimal changes were made to the revised TSB, which simply removed "European exhaust warning light reference in text" and added "additional model year applicability." *Id.* Although the 2011 TSB is not publically available, NHTSA summarized the TSB as follows: "**VOLKSWAGEN: CERTAIN MODELS ARE EXPERIENCING ENGINE NOT STARTING, MAKING A RATTLING NOISE WHEN ENGINE HAS STARTED, TIMING CHAIN KEEPS SLIPPING AND EXHAUST LIGHT COMES ON. *PE**." Exhibit K (the "2011 TSB") (emphasis added).

82.     According to NHTSA, the 2011 TSB applied to the following vehicles with 2.0L TSI engines: 2008-2010 VW Beetle; 2009-2011 VW CC; 2008-2011 VW EOS; 2008-2011 VW Golf; 2008-2011 VW GTI; 2008-2011 VW Jetta; 2008-2010 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2011 VW Routan; 2008-2011 VW Tiguan; 2008-2011 VW Touareg; and 2011 VW Touareg Hybrid.

83.     Plaintiffs were never provided with copies of or information about the TSBs described above.  Further, on information and belief, the TSBs were not directly communicated to consumers.  Thus, despite the safety risk associated with the defective Timing Chain System, which Defendants recognized was in the majority of VW and Audi's 2008-2013 2.0L TSI and TFSI models, Defendants failed to disclose the defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes, and, instead, intentionally concealed the defect.

84.     The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers,  repair order and parts data received from the dealers, and testing performed in response

28

to consumer complaints evidence that since as early as 2008, Defendants have had exclusive and superior knowledge regarding the Timing Chain System defect.  Further, Defendants gained their knowledge of the defect through sources not available to Plaintiffs and members of the Classes.

### 2.    National Highway Traffic Safety Administration Complaints

85.    In addition to the TSBs and other evidence of Defendants' knowledge of the Timing Chain System defect, Defendants have knowledge of the defect due to consumer complaints, such as those made to the NHTSA, which Defendants monitor as part of a continuous obligation to identify potential defects in their vehicles.[5]

86.    Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the Timing Chain System defect and its safety risks.   Defendants' deceptive acts, misrepresentations, and/or omissions regarding the Timing Chain System defect create a safety risk for drivers and occupants of the Class Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience a Timing Chain System failure while they are being driven.   The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiffs and members of the Classes at all relevant times.

87.    Below is a small sample of consumer complaints made to NHTSA regarding failures of the Timing Chain System:

- **Date Complaint Filed:** 11/12/2014
  **Date of Incident:** 10/21/2014
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10654587

---

[5] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, and enter detailed contact information and vehicle information (including an accurate VIN) before their complaint is reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

**Consumer Location:** NEW LENOX, IL
**Vehicle MakeModelModel Year(s)**
VOLKSWAGENTIGUAN2009
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGAV75N29W...

**SUMMARY:**
I BROUGHT MY TIGUAN IN DUE TO AN ENGINE LEAK AND TO HAVE AN
ENGINE DIAGNOSTIC. THEY INDICATED THE MAIN REAR MAIN SEAL WAS
LEAKING. 700 PLUS DOLLARS. REPAIRED THE SEAL THE LEAK STOPPED
BUT THE LOW ENGINE PRESSURE LIGHT WOULD NOT GO OFF. THE THEN
INDICATED THAT THE TENSIONER ARM WAS BAD AND THAT NEEDED TO
BE REPLACED. I RECEIVED A CALL THE NEXT DAY THAT THE TENSIONER
WAS BAD BUT THE TENSIONER CHAIN HAD WALKED OFF THE ROCKER
ARM AND THAT THE ENGINE NEEDS TO BE REPLACED. I CALLED MULTIPLE
TIMES TO VOLKSWAGEN CUSTOMER CARE MULTIPLE TIMES AND THEY
RESPONDED THAT THEY CANT HELP WITH ANYTHING. I HAVE
RESEARCHED THE TENSIONER ARM THROUGH GOOGLE AND FOUND
PAGES AND PAGES OF BLOGS WITH PEOPLE THAT HAVE EXPERIENCED
THE SAME ISSUE WITH THE TENSIONER ARM FAILING RESULTING IN
ENGINE FAILURE. *TR

- **Date Complaint Filed**: 07/13/2015
  **Date of Incident**: 07/07/2015
  **Component(s):** ENGINE , UNKNOWN OR OTHER NHTSA ID Number: 10733776
  **Consumer Location**: PFLUGERVILLE, TX
  **Vehicle Make Model Model Year(s)**
  AUDI A4 2009
  Manufacturer: Volkswagen Group of America, Inc.
  Vehicle Identification No. (VIN): WAUCF78K59N...
  Crash: No Fire:
  No Number of Injuries: 0
  Number of Deaths: 0

**SUMMARY:**

THE TIMING CHAIN TENSIONER FAILED CAUSING THE AUDI
INTERFERENCE ENGINE TO BECOME OUT OF SYNC RESULTING IN THE
ENGINE BECOMING TOTALED. THIS HAS BECOME A COMMON
OCCURRENCE AND IS WIDELY REPORTED ON 2009 AND NEWER MODELS.
BELOW IS AN ARTICLE WITH THEIR ASSESSMENT OF THE SITUATION. THE

CAR HAD BEEN TAKEN IN 2X FOR MISFIRES AND WAS DIAGNOSED AS AN ISSUE WITH THE SPARK PLUGS, IT IS NOW CLEAR THAT THIS WAS THE TIMING CHAIN BEING OUT OF ALIGNMENT AND MISSED. UPON THE ENGINE LIGHT COMING ON THE CAR WAS LEFT PARKED UNTIL THE DAY BEFORE THE SERVICE APPOINTMENT WHEN IT WAS TO BE DROPPED OFF AT THE SERVICE LOCATION, AT THAT TIME, UPON STARTING THE VEHICLE THE TIMING CHAIN TENSIONER FAILED AND CAUSED THE ENGINE TO FIRE OUT OF ALIGNMENT DAMAGING THE ENGINE. WHEN SPEAKING TO A MEMBER OF THE AUDI DEALERSHIP IT WAS SHARED THAT ANOTHER VEHICLE IS IN FOR THE SAME ISSUE AND THAT THEY ARE SEEING THIS OCCUR MORE AND MORE IN THEIR VEHICLES. THIS FAILURE IS ALSO REMINISCENT OF THE 2007 CLASS ACTION LAW SUIT, WHICH PROMPTED AUDI TO MOVE FROM A TIMING BELT TO THE FOR THE SAME OUTCOME OCCURRING.
HTTP://REDLINESPEEDWORX.COM/20TTSITIMINGCHAINFAILURE/
IF AUDI HAD PLACED OUT UPDATED PARTS, I WOULD LIKE TO KNOW WHY THERE WAS NO RECALL TO REPLACE THE PART OR ANYTHING MENTIONED BY THE MANUFACTURE INDICATING THE RELEASE OF UPDATED HARDWARE TO ADDRESS A "POTENTIAL ISSUE

- **Date Complaint Filed:** 11/08/2015
  **Date of Incident:** 10/31/2015
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10789083
  **Consumer Location:** PORTLAND, ME
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2010
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGBV7AX6AW...

  **SUMMARY:**

  WHILE DRIVING 25-30 MPH ON A CITY STREET, VEHICLE STOPPED ACCELERATING (MUCH LIKE RUNNING OUT OF GAS...) DEALER STATES TIMING CHAIN TENSIONER FAILED DESTROYING ENGINE-I UNDERSTAND VW HAS A TSB OUT ON THIS FOR YEARS AND THOUGH I SERVICED MY VEHICLE AT DEALER, NEVER KNEW OF THIS POTENTIAL PROBLEM

- **Date Complaint Filed:** 12/11/2015
  **Date of Incident:** 12/05/2015
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10809622

**Consumer Location:** NEWNAN, GA
**Vehicle MakeModelModel Year(s)**
VOLKSWAGENEOS2010
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVWFA7AH2AV...

**SUMMARY:**

TL* THE CONTACT OWNS A 2010 VOLKSWAGEN EOS. WHILE ATTEMPTING TO TURN ON THE ENGINE, THE KEY FAILED TO START THE VEHICLE. THE VEHICLE HAD TO BE TOWED TO THE LOCAL MECHANIC WHO STATED THAT THE TIMING CHAIN FRACTURED AND THAT THERE WAS NO COMPRESSION. THE MECHANIC DIAGNOSED THAT THE TIMING CHAIN, VALVES, AND ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 61,000.

- **Date Complaint Filed:** 12/19/2015
  **Date of Incident:** 07/06/2015
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10811243
  **Consumer Location:** HOUSTON, TX
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2009
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGAV75N69W...

**SUMMARY:**

WHILE DRIVING WITH MY FOUR YEAR OLD IN THE BACKSEAT OF THE CAR, THE CAR SUDDENLY MISFIRED AND THE ENGINE ROUGH IDLED. THE CAR STALLED AT INTERSECTIONS AND IN THE MIDDLE OF THE ROAD. WE ALMOST GOT INTO AN ACCIDENT AS WE WERE DRIVING DOWN A CITY STREET, AS CARS BEHIND US HAD TO SWERVE OUT THE WAY WHEN OUR ENGINE STALLED. WE TOOK IT TO THE MECHANIC IMMEDIATELY, AS IT WAS CLEARLY HAZARDOUS TO HAVE ON THE ROAD, AND FOUND THAT A PISTON HAD MISFIRED AND STRETCHED THE TIMING CHAIN. THE CAR, A

VW TIGUAN FROM 2009, WAS ONLY 6 YEARS OLD WHEN THIS EVENT OCCURRED.

- **Date Complaint Filed:** 02/03/2016
  **Date of Incident:** 01/31/2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10823939
  **Consumer Location:** BALTIMORE, MD
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2010
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

TL* THE CONTACT OWNS A 2010 VOLKSWAGON TIGUAN. WHILE DRIVING AT VARIOUS SPEEDS, THE VEHICLE BECAME UNRESPONSIVE AND THE ENGINE WOULD NOT OPERATE AS NORMAL. THE CHECK ENGINE LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TIMING CHAIN TENSIONER BELT FAILED AND THE ENGINE WOULD NEED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 83,000

- **Date Complaint Filed:** 8/28/2015
  **Date of Incident:** 8/21/2015
  **NHTSA ID Number:** 10760009
  **Vehicle MakeModelYear(s)**
  VOLKSWAGENTIGUAN2009
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGBV95N29W…

SUMMARY:

WHILE DRIVING ON ROAD APROX. 40MPH THE VEHICLE SUDDENLY STOPPED RUNNING-HAD TO COAST TO SIDE AND TOW IT.WHEN TOWED TO VW DEALER -THEY SAID TIMING CHAIN TENSIONER FAILED AND IT'S COMMON PROBLEM.THEY EVEN HAD TSB FOR THAT.WHY THEY DON'T

33

RECALL THIS SINCE THEY ARE AWARE OF IT.IF I WAS AT HIGHER SPEED ON INTERSTATE, I WOULD BE IN BIG TROUBLE.

- **Date Complaint Filed:** 1/22/2015
  **Date of Incident:** 12/9/2014
  **Components:** Engine
  **NHTSA ID Number:** 10678414
  **Consumer Location:** Arvada, CO
  **Vehicle Make Model Year(s)**
  VOLKSWAGENTIGUAN2010
  Crash:  No
  Fire:  No
  Number of Injuries:  0
  Number of Deaths:  0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** VWGBV7AX5AW…

  SUMMARY:

  DRIVING ON FREEWAY AT 70 MPH AND EXPERIENCED FAILURE OF TIMING CHAIN TENSIONER. CAM SKIPPED CHAIN AND CAUSED PISTONS TO IMPACT VALVES. TOTAL AND COMPLETE ENGINE FAILURE THAT WAS SUDDEN AND UNEXPECTED AT HIGHWAY SPEED. MY RESEARCH FINDS THAT VW IS AWARE OF THIS PROBLEM BUT WILL NOT ISSUE A RECALL. *TR

### 3. The Chain Tensioner Redesign

With the exclusive and superior knowledge that the Chain Tensioner exhibited defects that caused the timing chain to skip a sprocket thereby disrupting the engine timing, Defendants redesigned the Chain Tensioner in or around 2012.  The redesigned chain tensioner (the "Redesigned Tensioner"), part number 06K 109 467 K, is substantially different from the original defective Chain Tensioner.  Figure 14, is a side by side comparison of the defective Chain Tensioner and the Redesigned Tensioner:

**(INTENTIONALLY LEFT BLANK)**

| Part Exhibiting Failures: | Revised Design: |
|---|---|
| 06H 109 467 N | 06K 109 467 K |
|  |  |
|  |  |
|  |  |

88.     According to Plaintiffs' consultant, the two designs have substantial differences. Most notably, in the defective Chain Tensioner, the ratchet pawl is accessible from the outside of the part, and it is retained in its position in the slot by the external steel retainer clip.   In the Redesigned Tensioner, the grooved tensioner piston and internal clip are contained inside the structure of the part and the external retainer clip has been eliminated.   The piston is now covered by an end closure where it comes out of the housing, exhibiting a substantially different design configuration.

89.     In the original design, the approximately 8 mm length ratchet pawl—used to engage teeth cut into the top of the Chain Tensioner piston to maintain minimum tensioner force on the timing chain tensioning rail when the engine is shut off and pressurized engine oil is no longer forcing the tensioner piston outward—is made of sintered metal.  Sintered metal is a type of metal that has undergone a sintering process, in which powdered metal (as opposed to liquid metal) is heated beyond its melting point until the particles form a molecular bond, which creates forged metal.  Metals such as iron, copper, and aluminum are commonly turned into sintered metal.

90.     The sintered ratchet pawl in the defective Chain Tensioner is weaker than other forged metal and is prone to prematurely fail.  After as little as 50,000 miles, the teeth of the sintered metal pawl become sufficiently worn and/or distorted and are no longer capable of properly engaging the Chain Tensioner piston, thus allowing the piston to retract into the tensioner housing.  *See* Figure 15 (tensioner pawl removed from failed 2.0L TSI Tensioner System).

36



**FIGURE 15**

91.     The defective Timing Chain System also incorporated a timing chain constructed with alternating rows of link plate thicknesses, which likely allows the chain to stretch excessively and introduce unanticipated slack into the Timing Chain System, possibly contributing to the failure in the Class Vehicles.   As shown below, Defendants subsequently redesigned this timing chain.   *See* Figure 16 (new chain design on the left, old design on the right).



**FIGURE 16**

92.     Based on a preliminary analysis of the defective Chain Tensioner and the Redesigned Tensioner, Plaintiffs' consultant determined that it is likely that a materially significant number of vehicles with the Chain Tensioner will experience early failures before the design life of the Chain Tensioner is attained.  Given that the Chain Tensioner is integral to the engine and is time-consuming and expensive to replace, the design life of the Chain Tensioner is co-extensive with the design life of the engine.  Based on his extensive experience, Plaintiffs' consultant expects a properly designed chain tensioner and timing chain to last for a minimum of 150,000 miles before requiring replacement.

93.     There are multiple blogs and websites maintained by automotive enthusiasts who have shared their class engine timing chain failure with other Class Vehicle owners and individuals.  These sites have hundreds of entries and thousands of viewings concerning failed timing chain systems in class engines.[6]  Independent Volkswagen and Audi vehicle repair shops also have posted a description of the Timing Chain System failures on their websites.[7]

## V.     FURTHER ALLEGATIONS

94.     Defendants failed to inform Class Vehicle owners and lessees prior to purchase or lease of the Class Vehicles during the express warranty period that the Timing Chain System was defective and would fail shortly after the express warranty period expired.  Defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Timing Chain System defect in the Class Vehicles.

---

[6] *See, e.g.,* http://www.golfmk6.com/forums/showthread.php?t=47128 (last visited April 4, 2017).

[7] *See, e.g.,* http://www.minhsautocare.com/tsi-timing-chain/ (last visited April 4, 2017).

95.     Defendants also failed to inform Class Vehicle owners and lessees at the time of their purchase or lease of the Class Vehicle that the Timing Chain System had been inadequately tested prior to placing the car in production and at the time of vehicle sale or lease.

96.     Defendants also failed to inform Class Vehicle owners that there had been several significant subsequent Chain Tensioner and chain design improvements as described in this complaint that reduced and/or eliminated premature Timing Chain System failure while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service."[8]   Specifically, this powertrain limited warranty covered "all internal [engine] parts," including the Timing Chain System.   This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

97.     By as early as 2008, but no later than 2010, Defendants knew that Class Vehicles were experiencing premature Timing Chain System failures.   Despite this knowledge, Defendants continued to sell Class Vehicles with a defective Timing Chain System.   This knowledge is imputed to all Defendants because VW America was monitoring warranty claims and Class Vehicle performance in the United States and reporting back to its affiliated and parent companies located in Germany and the United States.

98.     Certain Plaintiffs were informed by representatives of VW America that VW America would not cover the cost for repairing Timing Chain Systems or engines because the Timing Chain System failure occurred outside of the express warranty period.

---

[8] Audi vehicles were covered by a general vehicle warranty of "4 years or 50,000 miles, whichever occurs first."

99.     Defendants refused to fully reimburse or compensate certain Plaintiffs for vehicle repair expenses or provide a suitable substitute or replacement vehicle.

100.    Although most Plaintiffs' and Class Members' vehicles' Timing Chain System failure occurred outside the unilateral express warranty period (which was neither seen nor bargained for prior to purchase), certain Plaintiffs' Class Vehicles exhibited unmistakable symptoms (known only by Defendants) of degradation and impending premature failure within the express warranty period.

101.    Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, Defendants failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

102.    Through no fault of their own, Plaintiffs and members of the Classes did not possess sufficient technical expertise to recognize symptoms of impending Timing Chain System failure.  This information, however, was well known to Defendants, but not revealed.

103.    Plaintiffs and members of the Classes relied upon material misrepresentations, fraudulent statements, and/or material omissions of employees and agents of Defendants at the time of purchase or lease, including but not limited to the useful and expected life of Class Vehicles and the recommended Class Vehicle maintenance program.

104.    Defendants' misrepresentations and fraudulent statements were received by Plaintiffs and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in the owner's manual and the USA Warranty and Maintenance pamphlets.  The representations created a reasonable belief that the useful life expectancy of Class Vehicles without a major engine failure was in excess of 120,000 miles.

These representations specifically related that the Timing Chain System was a non-maintenance engine component.

105.    Defendants actively concealed the true reasonably expected duration of Class Vehicle components, including but not limited to the Timing Chain System, from the Plaintiffs and all Class Vehicle purchasers and lessees.  Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a defective and/or improperly tested Timing Chain System that would prematurely fail within the reasonably expected useful life of the vehicle.

106.    Defendants intentionally failed to inform Class Vehicle purchasers and lessees that the Timing Chain System incorporated in Class Vehicles results in higher operational costs than alternative conventional timing chain systems or other competitive technology because the Timing Chain System prematurely fails within the reasonably expected useful life of the vehicle.

107.    Defendants actively and fraudulently concealed the existence of Class Vehicle design and manufacture defects (including defects covered under Class Vehicle warranties concerning materials and workmanship) and that the owner's manual accompanying Class Vehicles incorporated improper maintenance recommendations and maintenance intervals.

108.    Plaintiffs and members of the Classes did not learn that their respective Class Vehicle was defectively designed and/or manufactured until after their Timing Chain System failed.

109.    Certain Plaintiffs made calls to customer service telephone representatives employed by Defendants and Defendants had notice of the Timing Chain System defect.

110.    Authorized Volkswagen and Audi dealers did not have knowledge of and/or were counseled not to admit that any defects existed in Class Vehicles or that improper maintenance

recommendations were incorporated in the owner's manual. Volkswagen and Audi dealers  (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicle failures) improperly blamed Class Vehicle failures on certain conditions for which Defendants would not be responsible and/or denied the existence of defects in the Timing Chain System.

111.    Defendants had actual knowledge, constructive knowledge, and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to their Timing Chain System, suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including Plaintiffs and members of the Classes.

112.    Defendants acted to conceal the Timing Chain System defects during the warranty period so that repair costs would be shifted to Plaintiffs and members of the Classes once the warranty expired and the Timing Chain System failed.

113.    Defendants' knowledge of Class Vehicle defects was derived from warranty claims, claim supervisors, customer complaints and monitoring of performance of Class Vehicles by VW America quality assurance employees.   Additionally, the number of replacement components and subsequent component revisions would have placed Defendants on notice of Timing Chain System defects in Class Vehicles.  Knowledge of Class Vehicle defects is further imputed to Defendants prior to sale or lease of certain model year Class Vehicles because predecessor models using identical Timing Chain System components were also prematurely failing within their reasonably expected life.  Defendants elected to place into the stream of

commerce Class Vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the Timing Chain System.

114.     Additional information supporting allegations of fraud and fraudulent conduct is in the control of Defendants.  This information includes but is not limited to technical root cause analyses, communications with Class Vehicle owners, remedial measures, warranty claims, and internal corporate communications concerning how to deal with consumers who claim their class engines' timing chain tensioner was defective.

115.     Material information fraudulently concealed and/or actively suppressed by Defendants includes but is not limited to Class Vehicle defects described in the preceding paragraphs.

116.     Material information was fraudulently concealed and/or actively suppressed in order to sell Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance, and durability.  Class Vehicles incorporated a known Timing Chain System defect that would severely affect the useful life of the vehicle.

117.     Defendants (and particularly the sales and marketing executives at VW America) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that Class Vehicles would last over 120,000 miles or ten years before experiencing Timing Chain System failure.   Material information was fraudulently concealed and/or actively suppressed in order to protect Defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit VW and Audi's brand disparagement.

118.    Defendants had a duty to disclose to Class Vehicle owners and lessees that there were materials, manufacture, and/or design defects in Class Vehicles and that the owner's manuals set forth the wrong maintenance recommendations and maintenance intervals.

119.    This duty arose because Defendants knew that there were defects in the Class Vehicles and inaccuracies in the owner's manuals that affected vehicle operation and safety while Class Vehicle owners and lessees were not, and could not reasonably be, cognizant of these defects and dangers.

120.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from Plaintiffs and other purchasers and lessees.  Defendants breached their affirmative duty of disclosure to Class Vehicle owners and lessees.

121.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed, and suppressed the existence of defects in Class Vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

122.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase durational warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when Class Vehicles prematurely fail during their reasonably

44

expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models identical to Class Vehicle except for an engine with a belt driven valve train rather than the 2.0L TSI / TFSI chain driven valve train.

123.    Purchasers and lessees of Class Vehicles reasonably expect vehicles to function well in excess of the Class Vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers and lessees of Class Vehicles were led to believe by Defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection or maintenance for the timing chain system within this period.

124.    Given the conduct of Defendants and the design, manufacture, materials, and/or workmanship defects in Class Vehicles (that Defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable, and unconscionable because the warranty disclaimers of the proposed class representative and proposed members of the Classes were neither knowing nor voluntary.

125.    The warranty terms were unconscionable, because Defendants were fully aware of defects in the Class Vehicles that substantially reduced the expected useful life of the vehicle. Plaintiffs and members of the Classes were unaware of defects in the Class Vehicles at the time of purchase or lease.

126.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers and lessees, including Plaintiffs and members of the Classes.  This is because Defendants knew there were defects in Class Vehicles affecting the durational operation.

127.    Defendants included unfair warranty provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous and had been inadequately tested.

128.    Defendants knew defects in Class Vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle.  Defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

129.    Defendants unconscionably sold and leased defective Class Vehicles to Plaintiffs and members of the Classes without informing these purchasers and lessees that the Class Vehicles were defective.   In the alternative, Defendants failed to notify the Plaintiffs and members of the Classes after the time of sale or lease that the Timing Chain System had been redesigned and that the system in their respective vehicles should be replaced prior to the expiration of the warranty.

130.    Defendants' conduct renders the vehicle purchase and/or lease contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

131.    The durational limitation of the express warranties accompanying the Class Vehicles is unreasonable and unconscionable since Defendants actively concealed known vehicle defects and issued incorrect maintenance recommendations and maintenance intervals.  Plaintiffs and members of the Classes had no notice of or ability to detect the defects.

132.    Defendants restricted the limited power train warranty (including the class engine) duration to 5 years or 60,000 miles (whichever occurs first) for Class Vehicles in an effort to

avoid the cost of repairs because they were cognizant of Class Vehicle defects that existed at the time of sale.

133.    Engines in competitive vehicles manufactured and sold or leased at the time the Class Vehicles were manufactured and sold or leased ordinarily last longer than warranted by the limited power train warranty accompanying Class Vehicles.

134.    Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal Class Vehicle materials defects, workmanship defects, manufacturing defects, etc. and improperly recommended maintenance.

135.    Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

136.    Defendants failed to adequately test Class Vehicles in appropriate consumer environments prior to marketing, distribution, and sale.

137.    Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. Defendants' upper level management orchestrated this wrongful conduct.

138.    Even if Class Vehicles do not fail entirely, Class Vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for Timing Chain System inspections and/or premature replacement of the Timing Chain System and/or substantially reduced engine performance, as well as diminution of the resale value of their Class Vehicles.

139.    The proposed class representatives and proposed members of the Classes have not received the benefit of their bargain concerning their respective purchase of Class Vehicles.

140.    Defendants are persons within the context of the consumer protection laws of Florida and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to Plaintiffs and members of the Classes.

141.    Defendants violated the consumer protection laws of Florida with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to Plaintiffs and members of the Classes.

142.    Defendants were under a duty to disclose defects in Class Vehicles and associated safety risks as described in this complaint but failed to disclose to Plaintiffs and members of the Classes the characteristics of Class Vehicles with respect to defects in violation of the consumer protection laws of Florida.  Defendants' omissions (that Timing Chain Systems were defective and that this defect constituted a safety risk) deceived purchasers and lessees (including but not limited to Plaintiffs and members of the Classes).  Those disclosure omissions include the fact that Class Vehicle defects had a significant impact on the value, durability and future care of Class Vehicles.  This failure to disclose additional information concerning Class Vehicle defects had the capacity to, and in fact did, deceive purchasers and lessees (including Plaintiffs and members of the Classes) in a material respect.

143.    If Plaintiffs and members of the Classes had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of value, durability, maintenance expenses, safety, and care, they would not have purchased or leased the Class Vehicles or would have paid less for their vehicles since members of the Classes were led to believe that they were

purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of Class Vehicles.

144.    Defendants violated the consumer protection laws Florida by failing to inform Class Vehicle owners and lessees at the time of purchase or lease that Class Vehicles had known defects, that the vehicles would prematurely require major engine repairs and/or prematurely fail with resulting catastrophic failure and/or would have a significant effect on the vehicle's value.

145.    As a direct result of these omissions, Plaintiffs and members of the Classes purchased or leased Class Vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented, with an increased cost of vehicle ownership and an increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase or lease.

146.    The wrongful conduct of Defendants in violation of the consumer protection laws of Florida occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by Defendants' conduct.

**What the Omissions Were:**

147.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information concerning Timing Chain System defects, in an effort to deceive purchasers and lessees as described in this complaint.  At the time of purchase or lease, Defendants fraudulently omitted to disclose material matter regarding the defects in Class Vehicles, including their impact on future repairs, costs, and vehicle reliability.  Defendants fraudulently concealed from Plaintiffs and members of the Classes defects in Class Vehicles, even though Defendants knew or should have known that information concerning these defects was material and central to the marketing, sale, and lease of

Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Classes. Defendants concealed from Plaintiffs and members of the Classes during their warranty periods that a defect existed with the Timing Chain System, which could have and should have been fixed during the warranty period, particularly as it was a safety issue. Defendants' withholding of this material information deprived Plaintiffs and members of the Classes of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

148.   Plaintiffs and members of the Classes are entitled to the reasonable inference that Defendants' sales, marketing, engineering, and warranty departments and their executives were involved in these omissions. This is particularly true given Defendants' recent conduct involving compliance certification and pollution control defeat devices involved in the sale of diesel powered passenger vehicles around the world and particularly in the United States.

**The Context of the Omissions and the Manner in which they Misled:**

149.   Material information was fraudulently concealed and/or actively suppressed in order to sell or lease Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations as described in this complaint.

150.   If Plaintiffs and members of the Classes had been informed of defects in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or would have paid substantially less. If Plaintiffs and members of the Classes had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles, since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true

50

characteristics and attributes of Class Vehicles.  If Plaintiffs and members of the Classes had

been informed of the Timing Chain System defect during the warranty period, they would have

had the defective part replaced under warranty. Defendants' conduct that violated the consumer

fraud statutes alleged herein deprived Plaintiffs and members of the Classes of that remedy.

**What Defendants Obtained through the Fraud:**

151.    Material information concerning Class Vehicles was concealed and/or actively

suppressed in order to protect Defendants' corporate profits from loss of sales, purchase refunds,

warranty repairs, adverse publicity, and brand disparagement.  Purchasers believed they were

obtaining vehicles as having different attributes than described and purchased or leased and were

accordingly deprived of economic value and paid a price premium for their Class Vehicles.

Defendants had a uniform policy of not properly disclosing Class Vehicle defects in order to

promote sales and increase profits as described in this complaint.

152.    As a proximate and direct result of Defendants' unfair and deceptive trade

practices, Plaintiffs and members of the Classes purchased or leased Class Vehicles and

sustained an ascertainable loss, including but not limited to financial harm as described in this

complaint.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

153.    Any applicable statute of limitations has been tolled by Defendants' knowing and

active concealment of the Timing Chain System defect and the misrepresentations and omissions

alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were

deceived regarding the Timing Chain System defect and could not reasonably discover the latent

nature of the defect.

154.    Plaintiffs and members of the Classes could not reasonably discover Defendants'

deception with respect to the Timing Chain System defect in the Class Vehicles prior to

experiencing a failure and being informed of the reason for the failure.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Timing Chain System defect.

155.    Class Vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials, and/or workmanship defects in their vehicles.

156.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained a Timing Chain System prone to premature failure or safety risk.  As alleged herein, the existence of the Timing Chain System defect and safety risk were material to Plaintiffs and members of the Classes at all relevant times.

157.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the Timing Chain System defect and potential safety risk associated with the premature failure of the system.

158.    Defendants knowingly, actively and affirmatively concealed the facts alleged herein including the Timing Chain System defect.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active and affirmative concealment.

159.    Defendants fraudulently attributed the Timing Chain System failures to other factors and/or exculpating conditions for which Defendants had no responsibility when, in reality, Timing Chain Systems were failing due to design, manufacture, materials, and/or workmanship defects.

160.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment.  Defendants are, therefore, estopped from relying on statutes of limitation defenses in this action.

## VII.    CLASS ACTION ALLEGATIONS

161.    Plaintiffs bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(b)(3) on behalf of themselves and all members of the proposed Class and a Florida Sub-Class defined as follows:

> **Nationwide Class**: All persons or entities in the United States that purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class").

> **Florida Sub-Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Florida and all persons or entities in the State of Florida that purchased, leased, or own a Class Vehicle (the "Florida Sub-Class").

162.    Excluded from the Class and the Florida Sub-Class are Defendants and their parents, subsidiaries and corporate affiliates, officers, directors, employees, assigns, and successors, the court, court staff, Defendants' counsel, and all respective immediate family members of the excluded entities described above.  Also excluded from the Class and the Florida Sub-Class are any and all claims involving personal injury. Plaintiffs reserve the right to revise the definition of the Class and the Florida Sub-Class based upon subsequently discovered information and reserve the right to establish additional sub-classes where appropriate.  The Class and the Florida Sub-Class are collectively referred to herein as the "Classes."

**Numerosity of the Class: Fed. R. Civ. P 23(a)(1).**

163.    The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20.  It is estimated there are in excess of approximately 250,000 Class Vehicles imported into and/or manufactured in the United States.

Although the number, location, and identity of all proposed members of the Classes cannot be presently ascertained, this information is obtainable through discovery from the Defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

164.   Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.  The common and predominating questions of law and fact include, but are not limited to:

(a) Whether the Timing Chain System installed in the Class Vehicles is prone to premature failure;

(b) Whether the Timing Chain System installed in the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the Timing Chain System installed in the Class Vehicles presents a safety risk;

(d) Whether Defendants knew or should have known that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(e) Whether Defendants had a duty to disclose that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(f) Whether Defendants breached their duty to disclose that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or omitted material facts including the fact that the Timing Chain System

54

installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(h) Whether Defendants negligently or falsely misrepresented or omitted material facts, including the fact that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality, or grade of the Class Vehicles and the Timing Chain System defect;

(j) Whether Class Vehicles were sold with an owner's manual and/or USA Warranty and Maintenance manual that incorporated incorrect inspection and service intervals for the Timing Chain System;

(k) Whether Defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that Class Vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(l) Whether Defendants breached their implied warranties in that Class Vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(m) Whether Defendants violated The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and/or any other statutory duties under state laws;

(n) Whether Defendants were unjustly enriched by the conduct alleged herein;

(o) Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

55

(p) Whether members of the Classes would have purchased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

(q) Whether members of the Classes would have had the Timing Chain System repaired or replaced if Defendants had disclosed, prior to the expiration of the warranty periods, that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

(r) Whether Defendants actively concealed or omitted material facts from Plaintiffs and members of the Classes in order to sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Timing Chain System to Plaintiffs and the Classes;

(s) Whether Defendants committed unfair and deceptive business practices by failing to inform owners and lessees of Class Vehicles prior to purchase and/or lease and/or during the post-sale express warranty period that the Timing Chain System was defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety risk;

(t) Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

(u) Whether the court should establish a constructive trust funded from the benefits conferred upon the Defendants by their wrongful and unlawful conduct.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

165.    Plaintiffs' claims and defenses are typical of the claims and defenses of proposed Members of the Classes.  Class claims arise out of ownership or lease of Class Vehicles as

56

defined in ¶ 1.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendants.   Defendants have no claims or defenses unique to Plaintiffs or different from the proposed Members of the Classes.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

166.    Plaintiffs currently own their respective class vehicles and have no conflicting interests with any other proposed Class member.  Plaintiffs will fairly and adequately protect the interests of members of the Classes.  The claims of Plaintiffs and members of the Classes are so interrelated that the interests of members of the Classes will be fairly and adequately protected in their absence.

167.    Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

Superiority of a Class Action and Predominance of Common Questions: Fed. R. Civ. P. 23(b)(3).

168.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

169.    Maintenance of a class action in one court is the most economical procedural device to litigate the Class Vehicle and class engine claims for Class Vehicle owners and the Defendants.  Prosecution of separate actions by individual members of the Classes could create risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for the party opposing the Classes as recognized by Fed. R. Civ. P. 23(b)(1)(A).

170.    Prosecution of separate actions by individual members of the Classes could create risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

171.    There is a substantial likelihood that the Defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

172.    Questions of law and fact common to members of the Classes predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

173.    The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

174.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

175.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive.  Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VIII.   CLAIMS FOR RELIEF

**COUNT I**

**FRAUD**
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE FLORIDA SUB-CLASS)**

176.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

177.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

178.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants, and members of the public to safety risks with the intent that Plaintiffs and members of the Classes rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

179.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the entire engine

59

or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair, or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

180.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

181.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System defect would sell more Class Vehicles and would discourage Plaintiffs and members of the Classes from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further,

Defendants intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiffs and members of the Classes, in order to decrease costs and increase profits.

182.    Defendants acted with malice, oppression, and fraud.

183.    Plaintiffs and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment, and omissions.  As a direct and proximate result of Defendants' false representations, omissions, and active concealment of material facts regarding the Timing Chain System defect, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II

### NEGLIGENT MISREPRESENTATION
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE FLORIDA SUB-CLASS)

184.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

185.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

186.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs and members of the Classes because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.

187.    Defendants negligently misrepresented and omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants, and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiffs and members of the Classes have suffered actual damages.

188.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere to Plaintiffs and members of the Classes the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

189.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an

appropriate speed.  Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

190.    Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts.  As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System defect, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

191.    As a direct and proximate result of Defendants' breach of their express and implied duties, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial, including, but not limited to, compensatory damages, incidental, and consequential damages, and other damages allowed by law.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE FLORIDA SUB-CLASS)

192.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

193.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

194. Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase or lease the Class Vehicles.

195. Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

196. With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

197. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

198. In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the defective Timing Chain System, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

199.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

200.    The warranty terms were unconscionable both substantively and procedurally because Defendants possessed all of the bargaining power and knowledge.  Plaintiffs and the members of the Classes were inadequately equipped to intelligently negotiate the terms because they were unaware of the Timing Chain System defect.

201.    Plaintiffs and the members of the Classes experienced the existence of the Timing Chain System defect within the warranty periods, but had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiffs and members of the Classes that the Class Vehicles contained the Timing Chain System defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes.

202.    Because of the Timing Chain System defect, Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

203.    Plaintiffs and members of the Classes could not have reasonably discovered the Timing Chain System defect prior to failure.

204.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

205.    On information and belief, Defendants have not repaired or replaced the Timing Chain System free of charge for Plaintiffs and members of the Classes despite the Timing Chain System defect in the Class Vehicles at the time of sale or lease.

206.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design, and/or manufacture, and that were accompanied by an owner's manual and/or USA Warranty and Maintenance pamphlet that incorporated no inspection and service intervals for the Timing Chain System, even though Defendants knew these components were defective and required periodic inspection and service.

207.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design, and/or manufacture defects, which cause engine failure and/or failure to perform as warranted.

208.    Defendants were provided notice of the Timing Chain System defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System defect for an extended period of time.  Furthermore, on information and belief, Defendants have refused to repair or replace the Timing Chain System free of charge when failure occurs outside of the warranty periods, despite the defect's existence at the time of sale or lease of the Class Vehicles.

209.    Defendants' attempt to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because Defendants knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of

the Classes.  Among other things, Plaintiffs and the members of the Classes did not bargain for these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power and knowledge existed between Defendants and members of the Classes. Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

210.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other members of the Classes whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

211.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs, and members of the Classes were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

212.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Classes have been damaged in an amount to be determined at trial.

213.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT IV

## BREACH OF IMPLIED WARRANTY
## (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE FLORIDA SUB-CLASS)

214.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

215.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

216.    Plaintiffs and members of the Classes purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

217.    Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

218.    With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

219.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

220.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

221.    Defendants failed to provide legally binding written notice to proposed class representatives and other Class Vehicle purchasers of implied warranty exclusions at time of

purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of Uniform Commercial Code § 2-316 and therefore ineffective by law.

222.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherently defective Timing Chain System (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

223.    Under normal circumstances, a properly designed and manufactured Timing Chain System should last for the life of the engine or at least 120,000 miles without the need for repair or replacement. Defendants cannot disclaim this implied warranty as they knowingly sold or leased a defective product.

224.    Defendants were provided notice of the Timing Chain System defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System defect for an extended period of time and, on information and belief, have refused to repair or replace the Timing Chain System free of charge when failure occurs outside of the warranty periods, despite the defect's existence at the time of sale or lease of the Class Vehicles.

225.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

226.    Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power and knowledge existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

227.    Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

228.    Plaintiffs and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Classes, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

70

229.    Plaintiffs and members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

230.    Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Timing Chain System in Class Vehicles.

231.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

**COUNT V**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),
15 U.S.C. § 2301 *ET SEQ.*
(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF
OF THE FLORIDA SUB-CLASS)**

232.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

233.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

234.    Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

235.    Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

236.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

237.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

238.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

239.   Defendants provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the defective Timing Chain System, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

240.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in

bargaining power and knowledge existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

241. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

242. Defendants breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System defect. Without limitation, the Class Vehicles share a common Timing Chain System defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System defect.

243. Plaintiffs and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Classes, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

244. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle

and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality, or grade of the Class Vehicles and the existence of the Timing Chain System defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System defect.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

245.    Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.   Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

246.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

247.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT VI

## UNJUST ENRICHMENT
## (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE FLORIDA SUB-CLASS)

248.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

249.     Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

250.     Plaintiffs and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System defect.

251.     Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Timing Chain System defect in the Class Vehicles.

252.     As a proximate result of Defendants' false representations, omissions, and concealment of the Timing Chain System defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits, and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

253.     Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust, and inequitable conduct.

254.     Plaintiffs and members of the Classes seek an order requiring Defendants to disgorge their gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VII

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201 *ET SEQ.* (ON BEHALF OF THE FLORIDA SUB-CLASS)

255.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

256.    Plaintiffs bring this claim on behalf of themselves and members of the Florida Sub-Class.

257.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

258.    Plaintiffs and members of the Florida Sub-Class are "consumers" and "interested parties or persons" under the FDUTPA.  Fla. Stat. § 501.203(6) and (7).

259.    Defendants are engaged in the conduct of "trade or commerce" as defined by the FDUTPA.  Fla. Stat. § 501.203(8).

260.    One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

261.    Defendants committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions, and/or otherwise violated the FDUTPA.  Defendants intentionally and knowingly misrepresented the standard, quality, or grade of the Class Vehicles and intentionally and knowingly failed to disclose and concealed the Timing Chain System defect.  Defendants' misrepresentation of the standard, quality, or grade of the Class Vehicles and failure to disclose the Timing Chain System defect constitute unfair acts or practices in

violation of the FDUTPA because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and/or cause substantial injury to consumers.

262.    Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System would fail before the useful life of the engine.  Defendants knew or should have known that the majority of Timing Chain System failures would occur outside of the coverage periods of the manufacturer's warranties.

263.    Defendants knew or should have known that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, Defendants knew or should have known that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

264.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs and members of the Florida Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.

265.    Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiffs and members of the Class.

266.     Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

267.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System defect were likely to mislead a reasonable consumer and misled Plaintiffs and members of the Florida Sub-Class.

268.     When Plaintiffs and members of the Florida Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.

269.     Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs and members of the Florida Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs and members of the Florida Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

270.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System defect and corresponding safety risk are substantially injurious to consumers.  As a direct and proximate result of Defendants knowing, intentional concealment of the Timing Chain System defect in violation of the FDUTPA, Plaintiffs and members of the Florida Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial. Plaintiffs and members of the

Florida Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

271.    As a result of Defendants' FDUTPA violation, Plaintiffs Artola, Esquijarosa, Hylick, and Spencer, and members of the Florida Sub-Class are entitled to injunctive and declaratory relief, actual damages, costs, and attorneys' fees and costs.  *See* Fla. Stat. § 501.211.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs, the Class, and/or the Florida Sub-Class, and award the following relief:

A.  An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Florida Sub-Class, and Plaintiffs' counsel as counsel for the Class and Florida Sub-Class;

B.  An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.  Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Timing Chain System in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Classes for all costs and economic losses;

D.  A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

79

E.  An order awarding costs, restitution, disgorgement, punitive damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.  An order awarding any applicable statutory and civil penalties;

G.  A declaration that Defendants are required to engage in corrective advertising;

H.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.  An award of costs, expenses, and attorneys' fees as permitted by law; and

J.  Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED:  April 6, 2017                    Respectfully submitted,

                                         **PODHURST ORSECK, P.A.**

                                         By: /s/ Peter Prieto
                                         Peter Prieto (FBN 501492)
                                         John Gravante (FBN 617113)
                                         Matthew P. Weinshal (FBN 84783)
                                         Alissa Del Riego (FBN 99742)
                                         SunTrust International Center
                                         One S.E. 3rd Ave, Suite 2700
                                         Miami, Florida 33131
                                         Phone: (305) 358-2800
                                         Fax:    (305) 358-2382
                                         pprieto@podhurst.com
                                         jgravante@podhurst.com
                                         mweinshall@podhurst.com
                                         adelriego@podhurst.com

                                         *Attorneys for Plaintiffs and the proposed Classes*